## BONNER v. UNITED STATES (two cases).
### Nos. 8877, 8878.

Circuit Court of Appeals, Eighth Circuit.
Jan. 9, 1931.

Rehearing Denied Feb. 27, 1931.

E. M. Ditmon, of Fort Smith, Ark., for appellant.

W. N. Ivie, U. S. Atty., and G. T. Sullins, Asst. U. S. Atty., both of Fort Smith, Ark.

Before KENYON and GARDNER, Circuit Judges, and MUNGER, District Judge.

MUNGER, District Judge.

Appellant was convicted and sentenced for violations of the National Prohibition Act (27 USCA). He was tried under two indictments, consolidated for purposes of the trial. One indictment charged, in the first count, the unlawful possession of a half gallon of whisky on October 26, 1929. The second count charged the unlawful transportation of a half gallon of whisky on the same date. The third count charged an unlawful sale of a half gallon of whisky on the same date.

In the other indictment, the first count charged the unlawful possession of a half gallon of whisky on November 14, 1929, and the second count charged the unlawful sale of a half gallon of whisky on that date.

At the close of the evidence the appellant asked the court to instruct the jury to find a verdict of not guilty on each count in the indictments, and he assigns error in the refusal of the requests, claiming that the evidence was insufficient to show his guilt.

There was testimony on behalf of the United States and in support of the first indictment which tended to show that the owner of a local garage accompanied a federal prohibition agent and an assistant to the appellant's residence at the time and place alleged. After some negotiations, the appellant agreed to sell a half gallon of whisky to the prohibition agent, but told the agent to return and to wait at the garage and that he would bring the liquor there. The agent returned to the garage and the appellant soon drove into the garage and delivered the whisky to the agent and received payment for it. In support of the second indictment there was testimony which tended to show that the prohibition agent and his assistant drove to the appellant's residence at the time and place alleged and the agent asked the appellant for a half gallon of whisky. The appellant answered that he had about a half gallon, but that it was not at the house. Appellant told a man to go and get the liquor and described where it was, under some grass. The man returned in about fifteen minutes with the whisky in a fruit jar. There was some dirt and grass on the jar and the appellant directed the man to clean this off by washing it at a sink. The liquor was then delivered by the appellant to the prohibition agent and the agreed price was paid. These facts constituted substantial evidence of the

620

unlawful sales, transportation of liquor, and of possession of it by the appellant.

 It is claimed that the sentences for unlawful possession were erroneous because the possession was a mere incident of, and was included in, the offenses of unlawful sale. A contention of a similar nature was before the Supreme Court of the United States in Albrecht v. United States, 273 U. S. 1, 47 S. Ct. 250, 253, 71 L. Ed. 505, and in disposing of it the court said:

"There is a claim of violation of the Fifth Amendment by the imposition of double punishment. This contention rests upon the following facts. Of the nine counts in the information four charged illegal possession of liquor, four illegal sale, and one maintaining a common nuisance. The contention is that there was double punishment because the liquor which the defendants were convicted for having sold is the same that they were convicted for having possessed. But possessing and selling are distinct offenses. One may obviously possess without selling, and one may sell and cause to be delivered a thing of which he has never had possession, or one may have possession and later sell, as appears to have been done in this case. The fact that the person sells the liquor which he possessed does not render the possession and the sale necessarily a single offense. There is nothing in the Constitution which prevents Congress from punishing separately each step leading to the consummation of a transaction which it has power to prohibit and punishing also the completed transaction. The precise question does not appear to have been discussed in either this or a lower federal court in connection with the National Prohibition Act; but the general principle is well established. Compare Burton v. United States, 202 U. S. 344, 377, 26 S. Ct. 688, 50 L. Ed. 1057, 6 Ann. Cas. 362; Gavieres v. United States, 220 U. S. 338, 31 S. Ct. 421, 55 L. Ed. 489; Morgan v. Devine, 237 U. S. 632, 35 S. Ct. 712, 59 L. Ed. 1153."

This portion of the decision in the Albrecht Case has since been referred to in many cases in the federal courts in determining when an unlawful possession of an article is a mere incident of another offense, and when the possession is a separate offense. See Leonard v. United States (C. C. A.) 18 F.(2d) 208; Gatti v. United States (C. C. A.) 35 F.(2d) 959; Clayman v. Smithers (C. C. A.) 18 F.(2d) 955, 956; Nordelli v. United States (C. C. A.) 24 F.(2d) 665; Marco v. United States (C. C. A.) 26 F.(2d) 315. It was a subject of discussion by this court

in Berry v. United States, 18 F.(2d) 276; Hadley v. United States, 18 F.(2d) 507; Cain v. United States, 19 F.(2d) 472; Porter v. United States, 31 F.(2d) 544; Walsh v. White, 32 F.(2d) 240. An examination of the record of the trial in the Albrecht Case shows that the defendants Albrecht, Albrecht, and Maher were convicted upon evidence which was substantially as follows: The Albrechts maintained a place of business in East St. Louis, Ill., in a storeroom about thirty feet wide by seventy-five feet in length. On one side of that room there was a bar, such as is used for serving drinks. A partition at the rear end of this room separated it from another room, but entrance could be had to the rear room through doors in this partition. At the time of the transactions described by the witnesses, one of the Albrechts was in the storeroom, but all the dealings had by the government's witnesses were with Maher, who acted as a bartender. Count 3 of the information charged an illegal sale of a half pint of whisky on February 16, 1924, and count 7 the illegal possession of a half pint of whisky on that date. Count 1 of the information charged an illegal sale of two drinks of whisky on February 19, 1924, and count 5 the illegal possession of a half pint of whisky on that date. Count 2 charged an illegal sale of two drinks and a half pint of whisky on February 20, 1924, and count 6, the illegal possession of a half pint of whisky on that date. Count 4 charged an illegal sale of a half pint of whisky on February 27, 1924, and count 8, the illegal possession of a half pint of whisky on that date. The defendants were found guilty on each count. The evidence on behalf of the United States was undisputed, and as to counts 3 and 7, it showed that on February 16, 1924, two of the witnesses for the government entered the bar room, and observed four or five men in front of the bar who were being served by this bartender with "colored spirits" in whisky glasses, which the bartender had carried out from the rear room. One of the witnesses asked for drinks of whisky, and the bartender went into the rear room and brought out two glasses full of whisky, which he served to the witnesses, and which they paid for and drank. One of the witnesses then asked for a half pint, and the bartender "went into the rear and filled up a half pint bottle or got one already filled and delivered it" to the purchasers. "When the bartender went into the rear room to get it, he came out immediately."

The evidence relating to counts 1 and 5 showed that on February 19, 1924, two of

the government's witnesses entered the bar room and one asked the bartender for a drink of whisky. Thereupon the bartender "went to the back room and came out with two glasses in his hand and served us with the drink" in little whisky glasses, for which the witnesses paid.

The evidence as to counts 2 and 6 showed that on February 20, 1924, two of the government's witnesses entered the bar room, asked the bartender for a drink, and he served it to them in two glasses which he brought from the rear room. One of the purchasers then asked the bartender for a half pint of moonshine and it was served "in two glasses that he got from the rear room."

The evidence relating to counts 5 and 8 showed that on February 27, 1924, two of the government's witnesses entered the bar room, and asked the bartender for two drinks of whisky, and it was served to them by the bartender, who brought the liquor from the rear room. One of the witnesses then asked for a half pint and "he repaired to the back room, or back quarters somewhere behind the door marked private and came back with a half pint."

This was substantially all of the evidence relating either to possession or to acts of sale. There was no evidence of other possession of a stock of liquor, or of possession or sale at any prior time. The decision of the Supreme Court that there was no double punishment in that case, therefore, rests upon the acts done in the brief periods of the transactions relating to the sales and the inferences to be drawn from those transactions and the surrounding circumstances. In Hadley v. United States, 18 F.(2d) 507, this court cited the Albrecht Case and upheld convictions for both a sale and a possession of the same liquor, upon testimony which showed that two prohibition agents called at the defendant's drug store and asked to purchase liquor. The defendant told the agents to come back in half an hour. The agents returned as directed, and after some conversation as to the identity of one of the agents, the defendant sold him a pint bottle of gin. There was testimony that the druggist had sold one of the agents some alcohol on a prior occasion, but he was acquitted under the counts alleging that sale and of the possession of that alcohol.

In view of the conclusions announced in the Albrecht Case and in the Berry Case, upon the facts before the courts in those cases, it cannot be said that the possession by the appellant in this case was a mere incident of the sales made by him. The jury had before it evidence which showed that the appellant made a personal delivery of the liquor sold [see Porter v. United States (C. C. A.) 31 F.(2d) 544], that he negotiated the sales, that when the prohibition agent asked for the liquor, at the time of the second sale, appellant had answered that he had about a half gallon but that it was not at his house, and that he directed a third person where to find it and asked him to procure it. These were circumstances tending to show appellant's possession and ownership, and a possession which was at least a step leading to the consummation of the sales by the delivery of the liquor.

Other errors assigned relate to proceedings at the trial. Appellant's counsel sought to show by cross-examination of one of the government's witnesses that he had been drinking liquor some time in November, 1929. The court sustained an objection to this line of evidence unless some fairly definite time and place were fixed, so that it might be seen whether the facts sought to be shown had any materiality. Appellant asked the court to instruct the jury that possession of liquor in one's home is not a violation of law unless it is proved that the tax has not been paid. The court refused the request, stating that there was testimony tending to show that the appellant possessed the liquor for the purpose of sale. There was no reversible error in these rulings.

The appellant was sentenced to imprisonment in the United States penitentiary at Leavenworth, Kan., under the counts charging the sales. He was fined under the counts alleging illegal possession and ordered to be committed to that penitentiary until these fines for illegal possession were paid. It was erroneous to order his imprisonment in the penitentiary for a failure to pay the fines imposed because of this illegal possession. Cahill v. Biddle (C. C. A.) 13 F.(2d) 827. The judgment will be affirmed under counts 2 and 3 of the indictment in case numbered 2770, and under count 2 of the indictment in case numbered 2776. The sentences under count 1 in case No. 2770, and under count 1 in case No. 2776, will be set aside, and the cases remanded for imposition of new sentences under those counts.